**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 21-cv-01528-RMR-MEH

DOUGLAS F. CARLSON and
MAYA ZUBKOVSKAYA,

      Plaintiffs,

v.

COLORADO CENTER FOR REPRODUCTIVE MEDICINE, LLC,
FERTILITY LABS OF COLORADO, LLC, and
ROBERT L. GUSTOFSON, M.D.,

      Defendants.

---

**ORDER**

---

This matter is before the Court on remand from the Tenth Circuit Court of Appeals for the second time. ECF Nos. 127-28. Currently before the Court is Plaintiff's Motion to Vacate Order Finding that a Settlement Agreement Exists, ECF No. 134, Plaintiffs' Motion to Dismiss Non-Diverse Defendants, ECF No. 135, and Plaintiffs' Motion for Reconsideration of Dismissal of Motion for Sanctions as Moot, ECF No. 136. This multi-year litigation stems from a failed IVF attempt for the Plaintiffs, which in and of itself is an emotional journey. Now, Plaintiffs are seeking to undo what has been done, undo the contracts they signed with Defendants, undo the settlement agreement they signed, and undo their Second Amended Complaint in this matter. All this has resulted in a procedural quagmire that the Court must now sort through. For the reasons stated below, Plaintiff's

1

Motion to Dismiss Non-Diverse Defendants, ECF No. 135, is **DENIED**, Plaintiff's Motion

to Vacate Order Finding that a Settlement Agreement Exists, ECF No. 134, is **DENIED**

**without prejudice**, and Plaintiffs' Motion for Reconsideration of Dismissal of Motion for

Sanctions, ECF No. 136, as Moot is **GRANTED.**

## I.   BACKGROUND[1]

### A.   Factual Background

The Undisputed Facts in the Scheduling Order state:

> This case arises from reproductive endocrinology services that Plaintiffs contracted to receive from Defendants. Dr. Gustofson is the Colorado-based reproductive endocrinologist who treated Plaintiffs in their efforts to achieve their stated goal of a healthy pregnancy.
>
> On February 7, 2019, Plaintiffs and CCRM and FLC entered into an In Vitro Fertilization, Embryo Transfer, and Embryo Cryopreservation Informed Consent, Authorization, and Release agreement. Plaintiffs and CCRM and FLC also entered into a Comprehensive Chromosome Screening of Embryo(s) and Embryo(s) Transfer Consent, Acknowledgment and Release agreement. CCRM also provided Plaintiffs with its Notice of Privacy Practices.
>
> By the end of treatment in February 2020, CCRM had retrieved and processed three embryos that were in a condition to undergo comprehensive chromosome screening (CCS). Unfortunately, Defendant[] CCS determined that all three embryos were aneuploid.
>
> To date, FLC maintains storage of Plaintiffs' three aneuploid embryos.

ECF No. 24 at 10.

---

[1] On February 19, 2025, the Court ordered the parties to meet and confer to identify any findings of fact or conclusions of law that could be stipulated to. ECF No. 132. The Court's order was reiterated in its Text Only Entry on February 27, 2025. ECF No. 133. The Court is disappointed that the parties were unable to agree on any stipulated facts or conclusions of law. *See* ECF Nos. 135 at 5 and 139 at 2. The fact that the parties could not stipulate to a fact such as the date the operative complaint was filed is telling of the contentious nature of this litigation.

Plaintiffs admit that on the In Vitro Fertilization, Embryo Transfer, and Embryo Cryopreservation Informed Consent, Authorization, and Release ("IVF Consent") and Comprehensive Chromosome Screening of Embryo(s) and Embryo(s) Transfer Consent, Acknowledgment and Release" ("CCS Consent"), they declined donation of any aneuploid (incorrect number of chromosomes) embryos and instead requested that they be destroyed. ECF No 135-1 ¶¶ 21-26. Plaintiffs claim they made this selection because those were the only two options on the standard form, despite communicating with Dr. Gustofson about the right to transfer the aneuploid embryos to another clinic. *Id.* ¶¶ 14-20. Plaintiffs admit the CCS Consent stated, "CCS embryos determined to be abnormal will not be transferred to the uterus, transported to outside IVF laboratories or reanalyzed." *Id.* at ¶ 28.

Plaintiffs allege that on February 14, 2020, ["a]fter defendant CCRM communicated the CCS results to plaintiff Carlson, defendant CCRM's counselor and defendant CCRM committed tortious acts toward plaintiffs [] that caused both plaintiffs emotional distress and other damages, as well as physical injury to plaintiff Zubkovskaya."[2] ECF No. 41 ¶ 84. "On February 15, 2020, plaintiffs mailed a letter to

---

[2] These claims are not alleged in this matter, but were alleged in a case filed in the Northern District of California against CCRM and two of its employees, alleging professional negligence; violations of California's Confidentiality of Medical Information Act; a violation of California's Constitution Right to Privacy; invasion of privacy by public disclosure of private facts; and intentionally providing false information. *See Carlson et al v. Colorado Center for Reproductive Medicine, LLC et al*, 3:21-cv-06133-MMC, ECF No. 1 (N.D. Cal. Aug. 10, 2021). On May 10, 2022, the court in that case ordered Plaintiffs to show cause why the action should not be dismissed for lack of subject matter jurisdiction. *Id.* at ECF No. 65. On November 10, 2022, the parties filed a Joint Status Conference Statement. ECF No. 90. In it, Plaintiffs write that they served subpoenas to two entities named in a document filed by the defendants listing the ownership structure of CCRM for the purpose of determining whether diversity of citizenship existed. One of the recipient's served an objection to the subpoena. The statement also referenced jurisdictional discovery and interrogatories served on the Defendants. On March 21, 2023, the case was stayed pending the resolution of this case. *Id.* at ECF No. 100.

defendant CCRM requesting monetary compensation for damages resulting from this incident. On March 2, 2020, defendant denied plaintiffs' request for compensation." *Id.*

On June 3, 2020, Plaintiffs met with Dr. Gustofson. ECF No. 41 ¶ 87. After the meeting, Defendants provided a document titled "Release, Indemnification, and Hold Harmless Agreement for Transfer of Abnormal Embryos" ("Embryo Release"). *Id.*. Between June 3, 2020, and January 4, 2021, the parties exchanged four versions of a release that would allow for the transfer of the embryos to another clinic in exchange for releasing Defendants from liability related to the IVF services provided by Defendants. *Id.* ¶¶ 87-111. Plaintiffs refused to sign any version of the Embryo Release. ECF No. 135-1 at 8.

### B.    Procedural Background

On June 7, 2021, Plaintiffs Douglas F. Carlson and Maya Zubkovskaya (husband and wife), filed a case in the District of Colorado against Colorado Center for Reproductive Medicine, LLC ("CCRM"); Fertility Labs of Colorado, LLC ("FLC"); and Dr. Robert Gustofson, M.D., asserting diversity jurisdiction. ECF No.1. Such jurisdiction requires complete diversity, i.e. all plaintiffs must be diverse to all defendants. Plaintiffs are citizens of California. Plaintiff Carlson is an attorney. He represents himself pro se and his wife in this matter.

On September 21, 2021, in a proposed scheduling order, the parties wrote, [t]he parties agree that jurisdiction over defendant Gustofson is clear. However, plaintiffs do not believe that the pleadings, in their current state, confirm that this court, in fact, has jurisdiction over defendants CCRM and FLC." ECF No. 22. The issue was addressed

during the scheduling conference on September 28, 2021. ECF Nos. 23, 103 (Transcript). At the status conference, the Defendants agreed there was diversity jurisdiction. They stated on the record that none of the members of the Limited Liability Companies ("LLC") were California citizens. Honorable Nina Y. Wang, then a magistrate judge, held there was no reason to proceed with jurisdictional discovery because 1) there was no show cause order from this Court ordering Plaintiffs to show cause why the action should not be dismissed for lack of subject matter jurisdiction, and 2) Defendants' representation that none of the members of the LLCs were California citizens. Judge Wang emphasized that subject matter jurisdiction could not be waived. She told the plaintiffs that if they wanted to inquire about LLC defendants' membership, they could do so during formal discovery. Discovery commenced, ECF No. 103 at 4, but Plaintiffs never inquired about the membership of the Defendants' LLC in any of their discovery requests. ECF No. 139 at 4.

On January 28, 2022, the Plaintiffs' motion to file a second amended complaint was granted. ECF No. 39. On January 31, 2022, Plaintiffs' Second Amended Complaint, now the operative complaint, was filed. ECF No. 41. Plaintiffs asserted the following claims:

1) breach of contract regarding the embryos against CCRM and FLC;

2) fraud regarding the embryos against all defendants;

3) violations of the Colorado Consumer Protection Act ("CCPA") regarding the embryos against all defendants;

4) trespass to chattels regarding the embryos against all defendants;

5) negligent misrepresentation regarding the embryos against all defendants;

6) fraud regarding the success rate against Dr. Gustofson and CCRM;

7) violations of the CCPA regarding the success rate against Dr. Gustofson and CCRM; and

8) negligent misrepresentation regarding the success rate against Dr. Gustofson and CCRM.

ECF No. 41. In their Prayer for Relief, "Plaintiffs request that the court order defendants to perform the contract by releasing plaintiffs' embryos to plaintiffs' designated storage facility without a requirement for plaintiffs to agree to any terms, whether in any of defendants' Embryo Release documents or otherwise, and without a charge for storage of embryos." *Id.* at ¶ 225. Plaintiffs also claimed they suffered the "value and loss of use of the embryos in the amount of $10,000 per month since June 3, 2020," "emotional distress in the amount of $150,000 each", damages in the amount of $157,238.26 for payments and costs of the treatments, treble damages, statutory damages, interest and reimbursement for litigation costs. *Id.* ¶¶ 226-33

Discovery continued, and depositions were taken in February and March 2022. ECF No. 139 at 4. On April 20, 2022, the parties attended mediation, which resulted in a signed settlement agreement ("Settlement Agreement"). ECF No. 80. CCRM, FLC, and "their representative, executors, assigns, insurers, affiliates, employees, agents, servants, independent contractors, predecessors, and successors in interest, assigns, and attorneys" were identified as the Releasees, and Plaintiffs were identified as the Releasors. Dr. Gustofson was not named in the Settlement Agreement. The Settlement

Agreement contained a release of all claims against the Defendants in exchange for an undisclosed payment to Plaintiffs. *Id.* at 1. Before signing the agreement, Plaintiffs handwrote "Releasees will waive the $650 storage fee that FLC assessed on 2-23-21" on the Settlement Agreement. *Id.* at 8. The Settlement Agreement also required that Plaintiffs "file a stipulation of dismissal of all claims against Releasees which were alleged, or which could have been alleged, in the Colorado lawsuit, the California Lawsuit and the Administrative claims *with prejudice* upon execution." *Id.* at 2 (emphasis in the original). While disputing the language of the dismissal, Plaintiffs realized that a provision dealing with the transfer of embryos was not in the Settlement Agreement, and also had second thoughts about the amount of money being paid by Defendants. ECF No. 92 at 2-3.

On May 24, 2022, Defendants filed a Motion to Enforce Agreement and Expedite Entry of Judgment (the "Motion"). ECF No. 61. On December 14, 2022, then Magistrate Judge Michael E. Hegarty held an evidentiary hearing on Defendants' Motion. ECF No. 91. At the hearing, when it became apparent that Magistrate Judge Hegarty may rule against Plaintiffs, Plaintiff Carlson raised the issue of subject matter jurisdiction pursuant to diversity of citizenship. ECF No. 93-1, Hr'g Tr. 70:14-22. He said the issue was being dealt with in a related case in N.D. Cal., 21-cv-06133-MMC, and that subpoenas had been served. *Id.* During the hearing, the Defendants said they had produced information in their clients' possession related to various LLC entities, but it only went so far. *Id.* at 77:6-10. That is why Plaintiffs had to issue a subpoena. As far as Defendants knew, that entity was planning on quashing the subpoena. *Id.* at 77:15-19. Magistrate Judge Hegarty asked if the Defendants' investigation uncovered any non-diverse ownership, and the

response was that they had not. *Id.* at 77:24-78:4 ("And counsel that we've spoken to, kind of the last entity we've talked about says, based on his knowledge there is nobody that's a California resident that's in any of those ownership interests, but when we've asked to produce whatever documents Mr. Carlson has asked for, he declined."). Defendants asked Magistrate Judge Hegarty not to open jurisdictional discovery in D. Colo. because it was already ongoing in N.D. Cal. *Id.* at 79:7-13. MJ Hegarty agreed and asked the parties to keep him apprised of what they learn in N.D. Cal. *Id.* at 80:11-12.

On February 27, 2023, this Court adopted Magistrate Judge Hegarty's Recommendation to grant Defendants' motion to enforce the Settlement Agreement. *Carlson v. Colorado Ctr. for Reprod. Med., LLC*, No. 21-CV-01528-RMR-MEH, 2022 WL 18777081, at *1 (D. Colo. Dec. 21, 2022), r*eport and recommendation adopted*, No. 21-CV-01528-RMR-MEH, 2023 WL 2722443 (D. Colo. Feb. 27, 2023), *vacated and remanded*, No. 23-1095, 2025 WL 26120 (10th Cir. Jan. 3, 2025). Plaintiffs appealed the order granting enforcement of the settlement agreement and directing the parties to file papers to dismiss the case. *Carlson v. Colorado Ctr. for Reprod. Med., LLC*, No. 21-CV-01528-RMR-MEH, 2023 WL 2722443, at *3 (D. Colo. Feb. 27, 2023), *vacated and remanded*, No. 23-1095, 2025 WL 26120 (10th Cir. Jan. 3, 2025). Plaintiffs raised the issue of subject matter jurisdiction in their appeal. Plaintiffs noted that the entity defendants' citizenship was uncertain. On April 5, 2024, the Tenth Circuit remanded the case back to this Court for the limited purpose of determining whether diversity jurisdiction exists because the citizenship of the members of the defendant LLCs was unknown. ECF

8

No. 106. On May 8, 2024, this Court held a status conference and ordered limited jurisdictional discovery. ECF No. 110.

On May 8, 2024, Plaintiffs initiated jurisdictional discovery to identify the names and citizenship of the members of the LLC defendants, CCRM and FLC. Discovery responses from Defendants revealed four limited partnerships as members of the LLCs, and that TA Associates, a private equity firm, operated these partnerships. In response to Plaintiffs' subpoena to TA Associates, it was determined that multiple limited partners of TA Associates are citizens of California, as are the Plaintiffs. On August 30, 2024, the parties filed a Joint Status Report with their findings, confirming that this Court did not have subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the citizenship of two of the three defendants is not diverse. ECF No. 119 at 4. On August 23, 2024, Plaintiffs moved for sanctions against Defendants to recover the expenses related to travel for the December 14, 2022, hearing and third-party discovery. ECF No. 116.

On September 30, 2024, this Court entered Findings of Fact and Conclusions of Law, dismissing without prejudice the Second Amended Complaint, and finding as moot the Motion for Sanctions for lack of subject matter jurisdiction. *Carlson v. Colorado Ctr. for Reprod. Med., LLC*, No. 21-CV-01528-RMR-MEH, 2024 WL 4785383, at *2 (D. Colo. Sept. 30, 2024), appeal dismissed, No. 24-1429, 2025 WL 1233223 (10th Cir. Feb. 18, 2025). On October 18, 2024, Plaintiffs appealed the final judgment. ECF No. 125.

The Tenth Circuit asked the parties to "brief (1) whether the district court exceeded the limited remand's scope by dismissing the complaint and entering judgment, and (2)

whether we should vacate the district court's judgment and remand for it to determine whether to dismiss or instead to dismiss the nondiverse defendants." *Carlson v. Colorado Ctr. for Reprod. Med.*, LLC, No. 23-1095, 2025 WL 26120, at *1 (10th Cir. Jan. 3, 2025). Plaintiffs responded that they wanted the Tenth Circuit to: 1) dismiss the non-diverse LLC defendants, 2) remand the case to the Court for the limited purpose of reviewing a motion from them to amend their complaint to remove claims against the LLC defendants, and 3) brief the Tenth Circuit on their defense to the settlement agreement because defendants fraudulently induced them to contract. Plaintiffs claim they discovered the fraud for the first time in June 2024. On January 3, 2025, the Tenth Circuit remanded the case for a second time for the Court to determine "whether the LLCs are indispensable parties and whether dismissing them would prejudice the Defendants." *Id.* On January 27, 2025, the Tenth Circuit transferred jurisdiction back to this Court. ECF No. 129.

On February 19, 2025, the Court held a Status Conference to discuss next steps. ECF No. 132. On February 27, 2025, the Court ordered Plaintiffs to file their motion to dismiss the non-diverse parties, ECF No. 133, which they did on March 25, 2025, ECF No. 135, along with their Motion to Vacate Order Finding that a Settlement Agreement Exists, ECF No. 134, and Motion for Reconsideration of Dismissal of Motion for Sanctions as Moot, ECF No. 136.

## II. MOTION TO DISMISS NON-DIVERSE PARTIES

### A. Legal Standard

"The Supreme Court also [] recognized that when a district court enters a final judgment despite the presence of a nondiverse defendant, a court of appeals may dismiss

10

the nondiverse defendant under Federal Rule of Civil Procedure 21 to achieve diversity if the defendant is dispensable under Rule 19(b). *Woods v. Ross Dress for Less*, Inc., 833 F. App'x 754, 758 (10th Cir. 2021) (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 837-38 (1989)). "If factual disputes arise, a district court generally is 'in a better position to make the prejudice determination.'" *Id.* (quoting Newman-Green, 490 U.S. at 838). "A district court can dismiss a dispensable nondiverse party pursuant to Fed. R. Civ. P. 21 to cure a jurisdictional defect at any point in the litigation, including after judgment has entered." *Ravenswood Inv. Co., L.P. v. Avalon Corr. Servs.*, 651 F.3d 1219, 1223 (10th Cir. 2011) *see also* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."). Under Rule 19(a), a party is an indispensable party if (1) "in that person's absence, the court cannot accord complete relief among existing parties" or (2) "that person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) "impair or impede the person's ability to protect [an] interest" or (ii) "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a). If a party is required under Rule 19(a), Rule 19(b) provides the factors to consider as to whether it would be prejudicial to dismiss the required party:

> "When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

11

(2) the extent to which any prejudice could be lessened or avoided by:

    (A) protective provisions in the judgment;

    (B) shaping the relief; or

    (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). The Tenth Circuit has held "[t]he inquiry, in other words, is mainly one of prejudice . . . If "one or more parties will be unfairly prejudiced by dismissing" a defendant, the "court must dismiss the case in its entirety for lack of jurisdiction." *Grice v. CVR Energy, Inc.*, 921 F.3d 966, 969 (10th Cir. 2019) (quoting *Ravenswood Inv. Co.*, 651 F.3d at 1225-26). The standard of review as to whether a party is indispensable is an abuse of discretion. *Lenon v. St. Paul Mercury Ins. Co.*, 136 F.3d 1365, 1369 (10th Cir. 1998) ("The other issues—whether a party is indispensable and whether a dispensable party may be dismissed to maintain diversity—depend on the district court's careful exercise of discretion, and we review the court's determinations on those issues for abuse of discretion.")

### B.    Dispensable Party Analysis

Plaintiffs argue that "the LLC defendants are not required parties to litigation to resolve plaintiffs' claims against individual and diverse defendant Robert L. Gustofson, MD." ECF No. 135 at 4. Plaintiffs argue that to aid in the Court's analysis as to whether the LLCs are required parties, the Court should first 1) vacate its order finding that a

settlement agreement exists, ECF No. 134, and 2) grant the Plaintiffs leave to amend their complaint to dismiss the non-diverse defendants. ECF No. 135 at 6.

### 1.    Plaintiff's Request to Amend Their Complaint

Plaintiffs cite a Second Circuit case, *Samaha v. Presbyterian Hosp. in City of New York*, 757 F.2d 529, 531 (2d Cir. 1985), for the proposition that failure to grant Plaintiffs leave to amend their complaint would be an abuse of discretion. ECF No. 135 at 6. No other court in the Tenth Circuit has relied on *Samaha.* Further, the Court notes that it would only be an abuse of discretion "[if] it appears that a non-diverse defendant cannot be dropped from an action without prejudice to the remaining defendants." *Id.* (quoting *Kerr v. Compagnie de Ultramar,* 250 F.2d 860, 864 (2d Cir.1958)).

Plaintiffs argue that "prejudice to defendants is not a consideration if the missing parties are not required in the first place" under Rule 19(a). ECF No. 135 at 7 (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 8 (1990) ("Here, no inquiry under Rule 19(b) is necessary, because the threshold requirements of Rule 19(a) have not been satisfied.")) Plaintiffs believe that CCRM and FLC are permissive parties because Plaintiffs could have brought their claims against Dr. Gustofson alone.

Plaintiffs claim that if allowed to amend their complaint, they would drop claims 1 (breach of contract) and 4 (trespass to chattels). ECF No. 135 at 8-11. They would amend claims 2 (fraud), 3 (violation of the CCPA), and 5 (negligent misrepresentation) to allege them against Dr. Gustofson only for him "assur[ing] plaintiffs in writing that they had the option or right to transfer any aneuploid (abnormal) embryos to a storage facility (for possible use at another clinic.)" *Id.* Plaintiffs would continue to pursue claims 6 (fraud), 7

(violations of the CCPA), and 8 (negligent misrepresentation) against Dr. Gustofson for the statements he made to Plaintiffs about their chance of success if they underwent treatment at his clinic. *Id.* Plaintiffs claim they will pursue their claims against the non-diverse LLCs in state court. *Id.*

### 2.    Defendant LLCs Are Necessary Under Rule 19(a)

#### a)    *Prayer for Relief*

Plaintiffs' assertion that the LLC defendants are dispensable relies on the assumption that they are allowed to amend their complaint. Rule 19(a)(1)(A) holds that a party is indispensable if "the court cannot accord complete relief among the existing parties." Fed. R. Civ. P. 19(a)(1)(A). In the operative complaint, one of the Prayers for Relief is that the Court order that Defendants release Plaintiffs' embryos. ECF No. 41 ¶ 225. Plaintiffs readily admit that Dr. Gustofson is not holding any of the Plaintiffs' property. The Court cannot grant the relief of releasing the embryos if the LLC defendants are not parties to the lawsuit. Therefore, under the operative complaint, the LLCs are indispensable under Rule 19(a). Recognizing that to be the case, Plaintiffs argue they will drop claim 4 and pursue it in state court if allowed to amend their complaint. ECF No. 135 at 11. But the LLC's absence from this litigation may leave Dr. Gustafson subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of P's claimed interest—the precise harm Fed. R. Civ. P. 19(a) was partially designed to avoid. For example, Plaintiffs' assertion that they should be allowed to transfer the embryos to another storage facility. As detailed in the next section, these claims are inextricably intertwined and therefore, also likely to have the potential to

expose Dr. Gustafson to double, multiple, or otherwise inconsistent obligations. Such successive litigation in other forums is precisely what Rule 19 analysis is to consider.

### b)    Plaintiffs' Claims are Inextricably Intertwined

Next, Plaintiffs argue that the existence of a Settlement Agreement is not the "subject of the action" under Rule 19(a)(1)(B), but rather that if Plaintiffs are allowed to amend their complaint, the claims against Dr. Gustofson would become the subject of the action. ECF No. 135 at 12. The Court agrees the Settlement Agreement is not the "subject of the action," but it is certainly not irrelevant. The subject of the action is the claims that Plaintiffs brought against both Dr. Gustofson and the LLC defendants. The Second Amended Complaint spends a considerable amount of time averring facts regarding the various "defendant CCRM and FLC" contracts that the "defendants required plaintiffs to sign" four days before Plaintiff Zubkovskaya's first surgical egg retrieval procedure, including the IVF Consent and CSS Consent and the LLC employees with whom they communicated. ECF No. 41 ¶¶ 66-71. Plaintiffs also spend a significant amount of time on the Embryo Release documents that Plaintiffs argue "reflect[] a malicious intent to perpetrate the fraud that began when defendants falsely represented, or concealed, or failed to disclose material facts relating to the 'option' to transfer aneuploid embryos to another clinic and the 'right' to transfer aneuploid embryos to another clinic or a storage facility." *Id.* at ¶¶ 156-59. The allegations regarding the various contracts/agreements form the basis of Plaintiffs' claims. These alleged facts, and the Second Amended Complaint as a whole, underscore the LLC defendants' interest in this action and the fact that the claims against the LLC defendants are inextricably intertwined with Plaintiffs'

15

claims against Dr. Gustofson. *Cf. Symes v. Harris*, 472 F.3d 754, 760 (10th Cir. 2006) (holding that the trial court did not abuse its discretion when it found that a corporation formed by a plaintiff was a necessary party due to overlapping individual and corporate claims).

Plaintiffs argue that the LLC defendants would have no recognizable interest in the litigation between Plaintiffs and Dr. Gustofson because "[r]espondeat superior liability does not make the employer a required party." ECF No. 135 at 7-8 (citing *Murphy v. Newport Waterfront Landing, Inc.*, 806 F. Supp. 322, 325 (D.R.I. 1992) ([A] "person has a joint action against the master and his servant for the injuries resulting from the negligence or wrongful act of the servant under the doctrine of respondeat superior, [such that] he may bring his suit against either the servant or the master.")) That may be true. However, here Dr. Gustofson is the employee. *Murphy*, and the cases cited by *Murphy*, stand for the proposition that the "employee is not a necessary party to a suit against his employer under respondeat superior." *Id.* Plaintiffs also argue that the defendant LLCs would not have an interest in the litigation because the LLCs would not be paying for the judgment. ECF No. 135 at 12. Instead, they argue, any judgment would be paid by Dr. Gustofson's liability insurance. *Id.* The Court is not convinced.

The LLC defendants do have an interest related to the subject of the action. They are parties to the contracts that all Defendants have allegedly breached, including the IVF Consent and CSS Consent. ECF No. 41 ¶¶ 123-142. The "central purpose of the contract was to produce embryos." *Id.* ¶ 125 Plaintiffs' fraud claims are based on allegations that "at the time of the formation of the contract, defendants concealed from or failed to

16

disclose to plaintiffs [] material fact" regarding the transfer of the embryos. *Id.* ¶ 153. Plaintiffs' misrepresentation claim is based on "Defendants provid[ing[ false information to the plaintiffs in the ICF Consent and the CCS Consent about the universe of options for disposition of aneuploid embryos." *Id*. ¶ 194. Plaintiffs' CCRM claims are based on "Defendants knowingly or recklessly made a false representation of the characteristics of their IVF services when they provided plaintiffs only two options in the IVF Consent and CCS Consent for disposition of aneuploid embryos." *Id.* at 165. Plaintiffs assert "[f]or the second circumstance in Rule 19(a), the LLCs would not have an interest related to the subject of the action against defendant Gustofson only for his tortious actions toward plaintiffs." The Court disagrees. There is no way to sperate the "tort" claims against Dr. Gustofson from the claims involving allegations that all Defendants used the contracts to mislead the Plaintiffs because all the claims involve the contractual relationship between all the Defendants and Plaintiffs. Thus, the Court concludes that the absence of the LLC defendants, as a practical matter, impairs or impedes the LLC defendants' ability to protect their interest and leaves them at a substantial risk of incurring inconsistent obligations because of that interest.

Plaintiffs argue that even if the LLC defendants were dismissed, they would still have control over Dr. Gustofson's actions, in part, because the same attorney in this matter has represented all three defendants and the "three defendants' interests are as aligned [] as one could possibly imagine." ECF No. 135 at 13. Plaintiffs then engage in a circular argument that argues that if the Court were to dismiss the defendant LLCs, Defendants could not "resurrect consideration of the existence of a settlement agreement

17

in a manner that makes the LLC defendants required parties" under Rule 19(a) and then move for a lack of subject matter jurisdiction. *Id.* at 14. But the court already agrees that the Settlement Agreement is not the subject of the action. Plaintiffs then argue that even without the defendant LLCs, Dr. Gustofson could still renew the Court's consideration of the Settlement Agreement because he can represent the interests of the LLC defendants. *Id.* at 17. And so, the circle continues.

As the Supreme Court recently stated, "the plaintiff is the master of the complaint, and generally has the right to choose whether to proceed in federal or state court." *Hain Celestial Grp., Inc. v. Palmquist*, 146 S. Ct. 724, 733 (2026) (cleaned up). Here, Plaintiffs chose the forum. They could have brought claims of fraud, misrepresentation, and violations of the CCPA against Dr. Gustafson alone in federal district court, but they did not. It appears they believed that when they brought this lawsuit nearly five years ago, the LLC defendants were indispensable. Specifically, the defendant LLCs are indispensable to get the relief that has been at issue throughout the litigation — the transfer of the embryos. The various contracts/releases that all three Defendants are parties to have also been the main focus of the litigation. As the operative complaint stands, the Court finds that the LLC defendants are required parties under Rule 19(a). The Court will now turn to whether, at this stage, the Court can proceed in equity and good conscience without the LLC defendants because a judgment in the absence of the LLC defendants would prejudice the LLC defendants and Dr. Gustofson.

18

### 3. Defendant LLCs Are Indispensable Under Rule 19(b)

This Court now turns to whether the action can proceed "in equity and good conscience." Fed. R. Civ. P. 19(b). If the Court concludes that the action cannot proceed as such, it "must deem the absent party indispensable and dismiss the suit." *Davis v. United States*, 192 F.3d 951, 959 (10th Cir. 1999). In determining whether it can proceed, the Court must balance four factors: (1) the prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 108 (1968).

"[T]he standards set out in Rule 19 for assessing whether an absent party is indispensable are to be applied in a practical and pragmatic but equitable manner." *Symes*, 472 F.3d at 760 (quotation omitted). The Tenth Circuit has stated that "in some cases the interests of the absent person are so aligned with those of one or more parties that the absent person's interests are, as a practical matter, protected." *Davis ex rel. Davis v. U.S.*, 343 F.3d 1282, 1291–92. Rule 19(b) "leaves the district judge with substantial discretion in considering which factors to weigh and how heavily to emphasize certain considerations." *Davis v. United States*, 199 F. Supp. 2d 1164, 1176 (W.D. Okla. 2002) (quotation omitted), *aff'd sub nom. Davis ex rel. Davis*, 343 F.3d at 1282.

### a)    Prejudice

Plaintiffs make very little argument regarding the four factors or Rule 19(b), instead stating, "the LLC defendants are not required parties under a Rule 19(a) analysis . . . even if they were parties required to be joined if feasible, no prejudice to them under Rule 19(b) would result from their dismissal." ECF No. 135 at 13. Defendants focus on the prejudice factor, pointing to the resources that have been expended in defending this case, and that having a parallel case in state court may lead to inconsistent judgments. Plaintiffs argue that the LLC defendants would not be prejudiced by having to defend a new lawsuit in state court, and that the focus should be on "possible prejudice *from not being parties in a case against defendant Gustofson.*" ECF No. 135 at 13 (emphasis in the original). The Court agrees that the focus is on the prejudice to the LLC defendants for not being a party to this matter in federal court, and the Supreme Court says as much in *Hain Celestial Grp. See* 146 S. Ct. at 732 ("Hain also appeals to efficiency, arguing that it would be wasteful to send this case back to state court for a new trial. This argument also fails.").

The procedural posture here is different than the one in *Hain Celestial Grp.*, which was removed by the defendants to federal court. 146 S. Ct. at 729. That is not the case here. As referenced above, the Plaintiffs had the right to control the forum. They believed federal court would be the most advantageous. Plaintiffs could have moved to amend their complaint to dismiss the LLC defendants at various stages of this litigation, but they never did. They initially raised concerns about the citizenship of the LLC defendants and potential lack of diversity at the Scheduling Conference in September 2021. None of their discovery efforts afterwards addressed the diversity concern. Plaintiffs amended their

complaint in January 2022, but they did not dismiss the LLC defendants at that time. In May 2022, Plaintiffs were ordered to show cause in the N.D. Cal. case as to whether diversity existed between CCRM and Plaintiffs. Plaintiffs supposedly engaged in jurisdictional discovery to do so. In December 2022, Plaintiffs once again raised the diversity issue during the hearing on the motion to enforce the Settlement Agreement. Magistrate Judge Hegarty instructed the Plaintiffs to apprise the Court of the results of the ongoing jurisdiction discovery in the N.D. Cal. case, but they never did. The N.D. Cal. case was stayed pending the resolution of the Settlement Agreement in this case. Plaintiffs did not engage in jurisdictional discovery in this case until the case was remanded from the Tenth Circuit in April 2024. Now, years later, Plaintiffs are attempting to take a second bite of the apple by starting over with different claims, different parties, in different forums, by amending their complaint to dismiss the LLC defendants.

The Tenth Circuit has held "that the prejudice inquiry under Rule 19(b) 'is essentially the same as the inquiry under Rule 19(a)(2)(i) into whether continuing the action without a person will, as a practical matter, impair that person's ability to protect his interest.'" Davis ex rel. Davis, 343 F.3d at 1291 (quoting *Enter. Mgmt. Consultants, Inc. v. Hodel,* 883 F.2d 890, 894 n. 4 (10th Cir. 1989)). For the reasons discussed above, the Court has already found that a reading of Plaintiffs' allegation shows that the LLC defendants have an interest to protect because the claims involve the contracts they are a party to and the release of embryos. The Court respectfully concludes that allowing this action to proceed in the absence of the LLC defendants would prejudice them because

21

the LLC defendants could not assert or protect their interests. The first factor thus weighs in favor of finding that the LLC defendants are indispensable under 19(b).

### b)    Shape of Relief

As previously discussed, with respect to the release of the embryos requested by Plaintiffs, the focus of this litigation can only be effectuated if the LLC defendants are parties to the litigation. Thus, the second factor weighs in favor of finding that the LLC defendants are indispensable under 19(b).

### c)    Adequate Remedy and Alternative Forum

Here, the third and fourth factors weigh in favor of finding that the LLC defendants are indispensable under 19(b). The Tenth Circuit has stated that the fourth factor, the presence of an alternative forum, is "perhaps the most important . . . [and that] the absence of an alternative forum weighs heavily, if not conclusively against dismissal." *Davis ex rel. Davis*, 343 F.3d at 1293 (cleaned up). By this action, the Court would not deprive Plaintiffs of an adequate remedy or alternative forum for such claims because Plaintiffs could bring all of their claims in state court.[3] *U.S. Fire Ins. Co. v. HC-Rockrimmon, L.L.C.*, 190 F.R.D. 575, 577 (D. Colo. 1999) ("Lastly, all of the parties could be given complete relief if this case is filed in state court. This factor appears to weigh heavily in favor of finding that [the LLC defendants are] indispensable."). Plaintiffs also have a related case still pending in the N.D. Cal. that they can seek relief in. The fourth factor weighs in favor of finding that the LLC defendants are indispensable under 19(b).

---

[3] Colorado law allows parties whose action is terminated because of a lack of jurisdiction to "commence a new action upon the same action within ninety days after termination of the original action," Colo. Rev. Stat. § 13-80-11. This includes "actions which are first commenced in federal court." *Id.*

The Court finds that all four factors weigh in favor of a finding that the LLC defendants are indispensable under 19(b). Thus, the Court finds the nondiverse LLCs are indispensable parties to Plaintiffs' suit against Dr. Gustofson. Equity and good conscious dictates that this case should not proceed without the LLC defendants because the parties who can provide the relief requested would have to be dismissed to cure the jurisdictional defect, and Plaintiffs have clearly stated their intent to raise those claims in additional litigation. This could potentially result in "double, multiple, or otherwise inconsistent obligations" for Dr. Gustofson. Fed. R. Civ. P. 19(b). For example, Dr. Gustofson could be held liable in federal court for damages resulting from the failure to transfer the embryos to Plaintiffs, but he does not have the ability to transfer the embryos, given that they are being held by the LLC defendants. Presumably, this is precisely why Plaintiffs sought to bring these claims together in the case pending before this Court. Thus, the Court **DENIES** Plaintiff's Motion to Dismiss Non-Diverse Defendants. Before deciding what happens next, the Court will address Plaintiff's other two motions.

## III.    MOTION TO VACATE ORDER FINDING THAT A SETTLEMENT AGREEMENT EXISTS

"[P]laintiffs' move to vacate this court's order finding that a settlement agreement exists." ECF No. 134 at 2. Plaintiffs admit they thought that after this Court dismissed the nondiverse LLC defendants, the Tenth Circuit would once again take up Plaintiffs' appeal of this Court's order enforcing a settlement agreement. *Id.* at 1-2. Instead, the Tenth Circuit "vacate[d] the district court's final judgment dismissing Plaintiffs' complaint and remand[ed] for further proceedings," *Carlson v. Colorado Ctr. for Reprod. Med., LLC*, No. 23-1095, 2025 WL 26120, at *1 (10th Cir. Jan. 3, 2025), and transferred jurisdiction back

to this Court on January 27, 2026, ECF No. 129. Now relying on *Caterpillar Inc. v. Lewis,* *519 U.S. 61, 76–77 (1996),* Plaintiffs request that this "Court vacate its order finding that a settlement agreement exists." ECF No. 134 at 4. In *Caterpillar Inc.*, the Supreme Court held "if, at the end of the day and case, a *jurisdictional* defect remains uncured, the judgment must be vacated." 519 U.S. at 76–77 (emphasis in the original).

The Tenth Circuit has vacated this Court's final judgment dismissing Plaintiffs' complaint for lack of subject matter jurisdiction because of a lack of diversity jurisdiction, sending the case back for determination as to whether the jurisdictional defect can be cured. Here, the jurisdictional defect remains uncured and cannot be cured because the Court has found that the LLC defendants are a necessary party under Rule 19. The Court agrees that it did not have subject matter jurisdiction when the lawsuit was filed or when the Court issued its order adopting the Magistrate Judge's Recommendation that the Defendants' Motion to Enforce Settlement Agreement and Expedite Entry of Judgment be granted. ECF No. 96. This Court still does not have subject matter jurisdiction.

Defendants argue that Plaintiffs' motion to vacate the Court's ruling on the Defendant's motion to enforce the Settlement Agreement is an untimely, procedurally flawed motion under Fed. R. Civ. P. 60 (Relief from a Judgment or Order) or Fed. R. Civ. P. 62.1 (Indicative Ruling on a Motion for Relief that is Barred by Pending Appeal). ECF No. 137 at 3-4. Plaintiffs replied, arguing that "Rule 60(b)(6) allows the court to relieve a party from an order for 'any reason that justifies relief'" and that "[n]o time limit applies for motions filed pursuant to Rule 60(b)(6)." ECF No. 140. The Court disagrees with Plaintiffs that deciding whether to vacate the February 27, 2023, order, ECF No. 96,

24

is a "necessary and logical prerequisite to an evaluation of the indispensability of the LLC parties and well within the scope of the first step of the remand," ECF No. 134 at 6. The Court finds that it must only decide what to do with the February 27, 2023, order that Plaintiffs appealed and the Tenth Circuit declined to deal with on the merits, if, and only if, the Court found that, in equity and good conscience, the action should proceed with Dr. Gustofson as the sole defendant, which it has not. Therefore, Plaintiff's Motion to Vacate Order Finding that a Settlement Agreement Exists is **DENIED without prejudice**. The Court notes that the Settlement Agreement still exists. Either Plaintiffs or Defendants could attempt to enforce it as a contract in a different forum.

## IV.    Motion for Reconsideration of Dismissal of Motion for Sanctions as Moot

### A.    Motion to Reconsider

When this Court determined that diversity jurisdiction did not exist, it determined Plaintiffs' Motion for Sanctions Pursuant to Rule 11(c)(2), ECF No. 116, was moot. **H** *Carlson v. Colorado Ctr. for Reprod. Med., LLC*, No. 21-CV-01528-RMR-MEH, 2024 WL 4785383, at *2 (D. Colo. Sept. 30, 2024), *appeal dismissed*, No. 24-1429, 2025 WL 1233223 (10th Cir. Feb. 18, 2025). Plaintiffs are now asking this court to reconsider its dismissal of the motion for sanctions as moot. ECF No. 136 at 3.

A motion for reconsideration "is an extreme remedy to be granted in rare circumstances." *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995). It is well established in the Tenth Circuit that grounds for a motion to reconsider include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete*

25

*v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark*, 57 F.3d at 948). Here, plaintiffs are arguing clear error. The Supreme Court has held that a district court could, without running afoul of Article III, impose Rule 11 sanctions in a case in which it was later determined that the court lacked subject-matter jurisdiction. *Willy v. Coastal Corp.*, 503 U.S. 131, 139 (1992). The Court agrees it committed clear error when it determined that Plaintiffs' motion for Rule 11 sanction was moot because of a lack of subject matter jurisdiction, without reaching the merits of the motion.

## B.    Motion for Sanctions

On August 23, 2024, Plaintiff filed a motion for sanctions pursuant to Rule 11(c)(2), seeking:

- $70.00 for the costs of conducting and enforcing third-party discovery;

- $505.00 for the fee to file the notice of appeal;

- $535.36 for the transcripts of the hearings;

- $6,129.25 in fees paid to the mediator; and

- $307.06 in travel and lodging expenses to attend the hearing,

for a total of $7,547.66. ECF No. 116 at 13.

Rule 11provides that by presenting a pleading, written motion, or other paper, to the court, "an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances;" (1) the filing is not presented for any improper purpose; (2) the claims and legal contentions are warranted by existing law or a non-frivolous argument for the extension, modification or reversal of existing law; and, (3) "the factual contentions have evidentiary support, or, if

specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b).

Rule 11 establishes a standard of objective reasonableness. *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir. 1988). The test for imposition of Rule 11 sanctions is whether counsel's conduct was reasonable under the circumstances of the case. *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997). It does not require a finding of subjective bad faith on the part of the offending attorney. *Cf.* **H***Scott v. Boeing Co.*, 204 F.R.D. 698, 700 (D. Kan. 2002) (noting that an attorney's subjective good faith belief in the merits of an argument will not suffice to satisfy the standard of objective reasonableness).

The Tenth Circuit explained in *Ehrenhaus v. Reynolds,* 965 F.2d 916, 920 (10th Cir.1992) that in determining whether (and what) sanctions are appropriate, a court should consider: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant," [and] (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance." Before a court orders dispositive sanctions, it should also consider the efficacy of lesser sanctions. *Id.* at 921.

Plaintiffs allege several instances that would warrant Rule 11 sanctions. First, Plaintiffs allege Defendants filed five documents in violation of Rule 11, three Answers, ECF Nos. 16, 20, 45, the Proposed Scheduling Order, ECF No. 22, and the Motion to Enforce the Settlement Agreement, ECF No. 61. ECF No. 116 at 8-11. Plaintiffs also argue that the representations Defendants made to the Court during the scheduling conference in September 2021 and at the hearing in front of Magistrate Judge Hegarty in

27

December 2022 regarding jurisdiction were false. *Id.* Finally, Plaintiffs argue they ignored the Tenth Circuit rule requiring disclosure of the names and citizenship of the LLC members. *Id.*

This is a tough call. In *Tuck v. United Servs. Auto. Ass'n*, 859 F.2d 842, 846 (10th Cir. 1988), the Tenth Circuit "direct[ed] the district court to consider the need for sanctions against [the defendants] and/or its attorneys for allowing an action which they should have known to be improper to proceed, and the enormous waste of judicial time and resources." (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 911 (10th Cir. 1974)). There, several months after an appeal was filed, the defendant raised for the first time that complete diversity was lacking and the federal courts had no power to hear the case or enforce a jury verdict against it. *Id.* at 844. The circumstances here are similar, but here it was the Plaintiffs that "waited until after the adverse judgment had been rendered against it before it launched its jurisdictional attack." *Basso*, 495 F.2d at 911.

The party invoking federal jurisdiction—here, plaintiff—bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018) (presuming "no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction"). Here, Plaintiffs had the burden to demonstrate diversity jurisdiction existed, and though they raised it, they did not diligently pursue it until it appeared there was going to be an adverse ruling. The Court does not find that there was bad faith or actual fraud by Defendants, but that is not required in a Rule 11 analysis. Defendants were put on notice that there may have been a jurisdictional issue early on in this case,

but rather than investigate the issue, they continued to represent to the Court that, as far as they knew, none of the members of the LLC defendants were citizens of California. Both parties are at fault and have wasted judicial resources.

To provide a remedy, the Court will **GRANT in PART** and **DENY in PART** Plaintiff's motion for sanctions. The Court, in its discretion, **SANCTIONS** CCRM and FLC:

- $70.00 for the costs of conducting and enforcing third-party discovery;

- $505.00 for the fee to file the notice of appeal;

- $535.36 for the transcripts of the hearings; and

- $307.06 in travel and lodging expenses to attend the hearing,

For a total of $1,418.41 to be split equally between CCRM and FLC. The Court will not award Plaintiffs $6,129.25 in fees paid to the mediator because it was not required for the mediator to have jurisdiction over the parties to try to resolve the matter between the parties. The subject of the mediation attempted to resolve not only this action but also the action pending and stayed in N.D. Cal, which turns out also likely lacked subject matter jurisdiction.

## V.    CONCLUSION

"Federal courts are courts of limited jurisdiction and, as such, [they] must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso*, 495 F.2d at 909. Diversity jurisdiction requires that the parties be citizens of different states and that the amount in controversy exceed $75,000. 28 U.S.C. §

1332(a)(1). To determine the citizenship of an LLC, "federal courts must include all the entities' members." *See Siloam Springs Hotel, L.L.C.*, 781 F.3d at 1234 at 1238.

Here, Plaintiffs are citizens of California. Dr. Gustofson is a citizen of Colorado. Some of the members of the LLC defendants were identified as citizens of California. Thus, diversity jurisdiction does not exist. The Court has found that the LLC defendants are required parties and the action cannot proceed in equity and good conscience without them. Fed. R. Civ. P. 19(b). Thus, once again, this Court finds that it lacks subject matter jurisdiction, so it must dismiss Plaintiffs' claims.

Accordingly, it is **ORDERED**:

1. Plaintiffs' Motion to Vacate Order Finding that a Settlement Agreement Exists, ECF No. 134, is **DENIED without PREJUDICE**;

2. Plaintiffs' Motion to Dismiss Non-Diverse Defendants, ECF No. 135, is **DENIED**;

3. Plaintiffs' Second Amended Complaint, ECF No. 41, is **DISMISSED without prejudice** for lack of subject matter jurisdiction;

4. Plaintiffs' Motion for Reconsideration of Dismissal of Motion for Sanctions as Moot, ECF No. 136, is **GRANTED**;

5. At its discretion, the Court **SANCTIONS** CCRM and FLC and awards Plaintiffs $1,418.41 to be split evenly between CCRM and FLC; and

30

6.  The Clerk of Court shall enter **JUDGMENT** in accordance with this Order.

DATED:  March 31, 2026

BY THE COURT:

_____

REGINA M. RODRIGUEZ
United States District Judge